IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.

JAMES C. CASTLE,
a.k.a. J. CHRIS CASTLE; and
LARA KARAKASEVIC,

      Defendants.

      No. CIV S-10-0613 GEB EFB PS

<u>ORDER AND
FINDINGS AND RECOMMENDATIONS</u>

/

This case is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). Presently pending for decision is plaintiff's motion for summary judgment, which is noticed for hearing on April 27, 2011. Dckt. Nos. 45, 47. The court has determined that oral argument will not materially assist in resolving the motion and, accordingly, the April 27 hearing on the motion is vacated pursuant to Local Rule 230(g). The court has carefully reviewed the pleadings and evidence on file and finds that for the reasons stated below, plaintiff's motion for summary judgment must be granted.

I.    <u>BACKGROUND</u>

Defendants Castle and Karakasevic have filed Uniform Commercial Code ("UCC") financial statements against federal employees. Plaintiff, the United States brings this action "to

obtain a judicial declaration that certain documents filed by defendants James C. Castle and Lara Karakasevic with the Secretary of State for the State of California against certain employees of the United States are null, void, and without legal effect; and to enjoin the defendants from all future filings of similar documents." Second Am. Compl., Dckt. No. 29, at 1.

On February 17, 2011, plaintiff filed a motion for summary judgment and noticed the motion for hearing before the undersigned on March 23, 2011. Dckt. No. 45. Defendants did not file an opposition or a statement of non-opposition to plaintiff's motion for summary judgment and a response to plaintiff's statement of undisputed facts, in violation of Local Rules 230(c) and 260(b).[1] Therefore, on March 17, 2011, the court issued an order explaining the requirements set forth in Local Rules 230(c) and 260(b); continuing the hearing on plaintiff's motion for summary judgment to April 27, 2011; ordering defendants to show cause why sanctions should not be imposed for their failure to timely file an opposition or a statement of non-opposition to the pending motion and for their failure to timely file a response to plaintiff's statement of undisputed facts; and directing defendants to file an opposition to the motion, or a statement of non-opposition thereto, and a response to plaintiff's statement of undisputed facts, no later than April 13, 2011. Dckt. No. 47. The order further provided that "[a] failure to comply with this order may result in a recommendation that plaintiff's motion for summary judgment be granted." *Id.*

On April 6, 2011, defendants filed a "Notice of Conditional Acceptance" of the March 17 order to show cause. Dckt. No. 48. However, defendants still have not filed an opposition or a statement of non-opposition to the pending motion, a response to plaintiff's statement of undisputed facts, or a substantive response to the March 17 order to show cause.

////

---

[1] Instead, on March 1, 2011, defendants filed a "Notice of Conditional Acceptance" of the summary judgment motion. Dckt. No. 46. Defendants have filed similar notices of conditional acceptance of other documents filed in this action, and on August 13, 2010, the undersigned rejected many of the arguments made therein. Dckt. No. 24.

II.     MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment against defendants "declaring that the UCC Financing Statements and UCC Financing Statement Amendments filed by defendants James C. Castle and Lara Karakasevic against federal government employees are null, void, and of no legal effect, and enjoining Defendants from filing similar sham UCC Financing Statements in the future." Dckt. No. 45 at 1. Plaintiff requests the entry of a permanent injunction pursuant to 26 U.S.C. § 7402(a). Dckt. No. 45-1 at 1.

A.      Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

////

1    If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

////

////

B.  Facts

Based on the pleadings and evidence on file in this action, the court finds the following facts to be undisputed:

In the course of his official Internal Revenue Service ("IRS") duties, Revenue Officer Paul Enjalran was involved in the collection of unpaid federal tax liability from James Castle and his wife, Lara Karakasevic. Pl.'s Stmt. of Undisputed Facts ("SUF") ¶ 1.[2] On or about September 19, 2009, Revenue Officer Enjalran went to Castle's residential address, spoke with Karakasevic, and delivered a sealed envelope for Castle containing a Final Notice of Intent to Levy and publications informing Castle of his rights. SUF ¶ 2. On or about September 21, 2009, Enjalran requested, through the Automated Lien System, that a Notice of Federal Tax Lien be recorded against Castle in Sonoma County, California, for his outstanding tax federal income tax liabilities. SUF ¶ 3.

On or about September 24, 2009, Enjalran received correspondence from Castle which included three fictitious financing instruments labeled "Money Order, Private Issue" in the amounts of $68,724.80, $7,115.33 and $3,153.77. The correspondence falsely claimed that the money orders were backed by the Criminal Investigation Division of the IRS. Because the money orders appeared to be fictitious financing instruments, Enjalran did not process them. SUF ¶ 4.

On or about October 5, 2009, Enjalran received a telephone call from Castle asking why he had filed a Notice of Federal Tax Lien even though he had received Castle's "money orders." Enjalran informed Castle that the "money orders" were invalid and asked where Castle obtained them. Castle stated that the "money orders" came from the Department of Treasury and suggested that Enjalran contact the Criminal Investigation Division. Enjalran informed Castle that if he disputed the filing of a Notice of Federal Tax Lien, he could exercise his Collection

---

[2] All citations to the Statement of Undisputed Facts herein incorporate by reference those citations stated in the SUF in support of each undisputed fact.

Due Process Rights under Internal Revenue Code Section 6320.  SUF ¶ 5.

On or about October 22, 2009, Enjalran received correspondence from Castle which included another "Money Order, Private Issue" in the amount of $74,329.60, which is the balance that appears on the Notice of Federal Tax Lien.  Because this "money order" also appeared to be a fictitious financing instrument, it was not posted to Castle's account.  SUF ¶ 6.

On or about October 23, 2009, Castle filed with the Secretary of State for the State of California a UCC Financing Statement, Filing Number 09-7212189867, falsely describing Enjalran as a debtor in the amount of $74,329.60.  This filing was made in retaliation for the acts performed by Enjalran as part of his official duties, under his authority as an officer, or under the direction of officers, of the United States of America.  SUF ¶ 7.

On or about November 13, 2009, Enjalran received correspondence from Castle informing him that a UCC Financing Statement has been filed against him and that it will not be released until the Notice of Federal Tax Lien issued against Castle is released.  SUF ¶ 8.

Revenue Officer Enjalran is not personally acquainted with Castle and has not had any contact or relationship with him or Karakasevic other than in his official capacity as a Revenue Officer.  Enjalran has not engaged in any contract, security agreement, or personal transaction with Castle or Karakasevic and does not owe money to them.  There is no legitimate reason for Castle or Karakasevic to impose a lien on Enjalran's personal property.  SUF ¶ 9.  Enjalran is aware of the false UCC Financing Statement that Castle filed against him with the California Secretary of State.  The Financing Statement has caused him to experience distress and anxiety. Enjalran is concerned that the Financing Statement may have a negative impact on her permanent credit record.  SUF ¶ 10.

At all times relevant to this proceeding, Director Renee A. Mitchell was employed by the IRS and was involved in the collection of unpaid federal tax liability from Castle and Karakasevic.  SUF ¶ 11.  A facsimile of Mitchell's name appeared on the Notice of Federal Tax Lien issued by the Automated Lien System that was filed by Enjalran and recorded against

6

Castle. Other than in this capacity, Mitchell has no involvement in individual taxpayer cases. SUF ¶ 12.

On or about November 9, 2009, Castle filed with the Secretary of State for the State of California a UCC Financing Statement, Filing Number 09-7213771724, falsely describing R.A. Mitchell as a debtor. SUF ¶ 13. On or about December 1, 2009, Mitchell learned that Castle had recorded a lien against her with the Secretary of State for the State of California. SUF ¶ 14.

Director Mitchell is not personally acquainted with Castle and has not had any contact or relationship with him or Karakasevic. Mitchell has not engaged in any contract, security agreement, or personal transaction with Castle or Karakasevic and does not owe money to them. There is no legitimate reason for Castle or Karakasevic to impose a lien on Mitchell's personal property. SUF ¶ 15. Mitchell is aware of the false UCC Financing Statement that Castle filed against her with the California Secretary of State, and the Financing Statement has caused her to experience distress and anxiety because she is concerned that the Financing Statement may have a negative impact on her permanent credit record. SUF ¶ 16.

In the course of her official IRS duties, Revenue Agent Cheerlen Chang was involved in the collection of unpaid federal tax liability from Castle and Karakasevic. At all times pertinent to this action, Chang was an officer or employee of the Internal Revenue Service involved in the tax promoter investigation of Karakasevic. SUF ¶ 17.

On or about July 2, 2009, Chang was assigned by her Group Manager, Christopher Phillips, to the Internal Revenue Code Section 6700/6701 tax promoter investigation of Karakasevic. SUF ¶ 18. On or about July 16, 2009, Chang mailed an initial appointment letter and information document request form to Karakasevic. The letter stated that an agent would conduct an investigation on Karakasevic and TTF Consulting LLC for penalties and injunctions per Internal Revenue Code Section 6694, 6695, 6700, 6701, 7402, 7407 and 7408. SUF ¶ 19.

On or about August 18, 2009, August 28, 2009, September 3, 2009, and September 16, 2009, Chang received letters via registered mail from Karakasevic. The letters were "Notice of

7

Conditional Acceptance" documents similar to the filings in this case, which contained frivolous and irrelevant statements including that by contacting her, the IRS agent had entered into an implied contract for waiver of tort to all who trespass.  SUF ¶ 20.

On or about September 18, 2009, General Manager Christopher Phillips delivered summonses to Karakasevic and Castle.  Castle got a notice copy of the summons since he could be a partner in the entity under investigation, TTF Consulting LLC.  SUF ¶ 21.  On or about September 23, 2009, Karakasevic sent a bill $704,000 to Chang for trespassing Karakasevic's rights under waiver of tort.  SUF ¶ 22.

On or about September 23, 2009, September 28, 2009, October 8, 2009, and October 29, 2009, Chang received letters from Castle containing similar "Notice of Conditional Acceptance" language.  SUF ¶ 23.  On or about September 28, 2009, Chang received a bill from Karakasevic for $1,106,000.  SUF ¶ 24.  On or about October 29, 2009, Chang received a "30 days past due" notice from Karakasevic in the amount of $1,110,608.33.  SUF ¶ 25.  On or about February 12 ,2010, Chang received a bill from Castle for $101,000.  SUF ¶ 26.  On or about February 12, 2010, Chang received a bill from Karakasevic for $1,308,000.  SUF ¶ 27.

On or about March 12, 2010, Castle and Karakasevic filed with the Secretary of State for the State of California a UCC Financing Statement, Filing Number 10-7225380533, falsely describing Cheerlen Chang as a debtor.  This filing was made in retaliation for the acts performed by Chang as part of her official duties, under her authority as an officer, or under the direction of officers, of the United States of America.  SUF ¶ 28.

On or about March 12, 2010, Castle and Karakasevic filed with the Secretary of State for the State of California a UCC Financing Statement, Filing Number 10-7225386094, falsely describing Cheerlen Chang and Christopher Phillips as debtors.  This filing was made in retaliation for the acts performed by Chang as part of her official duties, under her authority as an officer, or under the direction of officers, of the United States of America.  SUF ¶ 29.  On or about June 28, 2010, Chang received a bill from Karakasevic for $1,610,500.  SUF ¶ 30.

On or about June 30, 2010, Castle and Karakasevic filed with the Secretary of State for the State of California a UCC-3 Financing Statement Amendment, Filing Number 10-72367455, which amended their March 12, 2010 UCC Financing Statement, Filing Number 10-7225386094 against Cheerlen Chang and Christopher Phillips.  This filing was made in retaliation for the acts performed by Chang as part of her official duties, under her authority as an officer, or under the direction of officers, of the United States of America.  SUF ¶ 31.  On or about July 7, 2010, Chang received a bill from Karakasevic for $2,012,500.  SUF ¶ 32.

Revenue Agent Chang is not personally acquainted with Karakasevic or Castle and has not had any contact or relationship with them other than in her official capacity as a Revenue Agent.  Chang has not engaged in any contract, security agreement, or personal transaction with Castle or Karakasevic and does not owe money to them.  There is no legitimate reason for Castle or Karakasevic to impose a lien on Chang's personal property.  SUF ¶ 33.  Chang is aware of the false UCC Financing Statements that Castle and Karakasevic filed against her with the California Secretary of State.  These Financing Statements have caused her to experience distress, anxiety and concern that the Financing Statements may have a negative impact on her permanent credit record.  SUF ¶ 34.

Christopher Phillips is a duly appointed Revenue Agent Group Manager, employed by the IRS.  At all times pertinent to this action, Phillips was an officer or employee of the IRS involved investigating abusive tax avoidance transactions, including the tax promoter investigation of Karakasevic.  SUF ¶ 35.  On or about July 2, 2009, Phillips assigned Chang to the Internal Revenue Code Section 6700/6701 tax promoter investigation of Karakasevic.  SUF ¶ 36.  On or about September 18, 2009, Phillips delivered summonses to Karakasevic and Castle.  Castle got a notice copy of the summons since he could be a partner in the entity under investigation, TTF Consulting LLC.  SUF ¶ 37.

On March 12, 2010, Castle and Karakasevic filed with the Secretary of State for the State of California a UCC Financing Statement, Filing Number 10-7225386094, falsely describing

9

Christopher Phillips and Cheerlen Chang as debtors. This filing was made in retaliation for the acts performed by Phillips as part of his official duties, under his authority as an officer, or under the direction of officers, of the United States of America. SUF ¶ 38.

On June 30, 2010, Castle and Karakasevic filed with the Secretary of State for the State of California a UCC-3 Financing Statement Amendment, Filing Number 10-72367455, which amended their March 12, 2010 UCC Financing Statement, Filing Number 10-7225386094 against Christopher Phillips and Cheerlen Chang. This filing was made in retaliation for the acts performed by Phillips as part of his official duties, under his authority as an officer, or under the direction of officers, of the United States of America. SUF ¶ 39.

Phillips is not personally acquainted with Karakasevic or Castle and has not had any contact or relationship with them other than in his official capacity as a Revenue Agent Group Manager. Phillips has not engaged in any contract, security agreement, or personal transaction with Castle or Karakasevic and does not owe money to them. There is no legitimate reason for Castle or Karakasevic to impose a lien on Phillips' personal property. SUF ¶ 40. Phillips is aware of the false UCC Financing Statements that Castle and Karakasevic filed against him with the California Secretary of State. These Financing Statements have caused Phillips to experience distress and anxiety because he is concerned that the Financing Statements may have a negative impact on his permanent credit record. SUF ¶ 41.

C.   Analysis

For the reasons discussed below, plaintiff has met its summary judgment burden by establishing that there is no genuine issue of material fact regarding whether defendants have interfered with the administration and enforcement of the internal revenue laws by filing invalid UCC Financing Statements in retaliation for Revenue Officer Enjalran, Director Mitchell, Revenue Agent Chang, and Revenue Agent Phillips' performance of their official duties, and that the invalid UCC Financing Statements and Amendments should be declared null and void.

////

Plaintiff has also established that defendants should be permanently enjoined from filing non-consensual liens against employees of the United States.

### 1. Void Financing Statement

Plaintiff seeks summary judgment on its claim under 26 U.S.C. § 7402. Section 7402(a) provides that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Section 7402 demonstrates "congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir.), *cert. denied*, 354 U.S. 923 (1957). "[T]here need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue [under § 7402(a)]. The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws." *United States v. Edwards*, 2008 WL 1925243, at *3-5 (E.D. Cal. Apr. 30, 2008) (quoting *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984)).

"The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions." *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984). Section 7402(a) empowers a district court "to void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes." *Ryan v. Bilby,* 764 F.2d 1325, 1327 (9th Cir. 1985). Bogus liens have been asserted "to harass IRS employees and deter them from enforcing the tax laws. The tax protestors, while claiming to act in the interests of freedom and personal liberty, use this weapon to harass private individuals in their private lives, as part of the tax protestors' campaign." *United States v. Van Dyke*, 568 F. Supp. 820, 821 (D. Or. 1983). Such liens "threaten substantial interference with the administration and enforcement of the internal revenue laws and are calculated to molest,

interrupt, hinder and impede officials of the Internal Revenue Service in the good faith performance of their official duties as employees of the government of the United States." *United States v. Hart*, 545 F. Supp. 470, 473 (D.N.D. 1982), *aff'd*, 701 F.2d 749 (8th Cir. 1983).

Under applicable California law, a lien is created by a contract between the parties or by operation of law. Cal. Civ. Code § 2881. Under California Commercial Code section 9203(b)(3)(A), a security interest in personal property is created by a security agreement between a debtor and secured party. "In the absence of a valid security agreement, a financing statement does not create an enforceable security interest." *In re Wes Dor, Inc.*, 996 F.2d 237, 239 n.2 (10th Cir. 1993).

Here, there is no genuine issue of material fact regarding whether defendants have interfered with the administration and enforcement of the internal revenue laws by filing invalid UCC Financing Statements and Amendments in retaliation for Revenue Officer Enjalran, Director Mitchell, Revenue Agent Chang, and Revenue Agent Phillips' performance of their official duties. Enjalran, Mitchell, Chang, and Phillips were assigned to collect the outstanding tax liabilities and investigate the tax promoter activities of the defendants and had no contact with the defendants outside the scope of their official duties, which consisted of requesting that they pay their outstanding federal tax liability, filing a Notice of Federal Tax Lien against the defendants when they failed to comply, and investigating the defendants' tax avoidance activities. *See* 26 U.S.C. §§ 6321, 6322 and 6331(a) (establishing that the Internal Revenue Service has been specifically authorized by Congress to collect outstanding federal tax liabilities). Defendants then retaliated against Enjalran, Mitchell, Chang, and Phillips personally for their actions on behalf of the United States by attempting to file UCC Financing Statements and Amendments and attempting to impose liens on them. Plaintiff has submitted the declarations of Enjalran, Mitchell, Chang, and Phillips as evidence that no security agreement or debtor relationship exists or existed between any of them and defendants, and defendants have failed to rebut that evidence.

Therefore, § 7402 authorizes this Court to declare the UCC Financing Statements and Amendments null and void, which they are. *See, e.g., Ryan v. Bilby*, 764 F.2d at 1327 (holding that (1) § 7402(a) empowers the district court to "void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes," and (2) the district court thus had jurisdiction to release "baseless" "common-law liens" against judge, magistrate judges, and attorneys involved in taxpayer's prosecution for failure to file tax returns); *Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1034-37 (9th Cir. 1985); *United States v. Edwards*, 2008 WL 1925243, at *3-5 (voiding sham UCC financing statements filed by taxpayer, and permanently enjoining taxpayer from filing any document or instrument purporting to create non-consensual liens or encumbrances against employees of the United States); *United States v. Tarantino*, 2007 WL 2062930, at *1 (E.D. Cal. July 16, 2007) (adopting magistrate judge's recommendation to (1) void UCC financing statements filed by taxpayer against IRS employees, and (2) permanently enjoin taxpayer from filing any documents or instruments of that kind against any employee of the federal government); *United States v. Dutson*, 2007 WL 934726, at *1 (E.D. Cal. Mar. 27, 2007) (same); *United States v. Roy*, 2007 WL 614002, at *1 (E.D. Cal. Feb. 27, 2007) (same); *United States v. Molen*, 2007 WL 587198, at *1 (E.D. Cal. Feb. 26, 2007) (same).

### 2. <u>Injunctive Relief</u>

Plaintiff also seeks a permanent injunction prohibiting defendants from filing any document or instrument which purports to create a non-consensual lien or encumbrance against the person or property of an employee or officer of the United States of America. Under § 7402, district courts have jurisdiction to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). "The requirements for the issuance of a permanent injunction are (1) the likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of remedies at law." *Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1317, n.3 (9th Cir. 2010) (quoting *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096,

1107 (9th Cir. 2003)).³ Additionally, "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

Here, the undersigned finds that defendants engaged in conduct subject to injunction under § 7402 and that the United States will likely suffer irreparable harm in the absence of an injunction prohibiting defendants from filing non-consensual liens or encumbrances against United States employees. Absent an injunction, defendants will likely continue to violate § 7402 and interfere with the enforcement and administration of the internal revenue laws, especially since defendants have not acknowledged that the UCC Financing Statements and Amendments they filed were frivolous. Without the permanent injunction plaintiff seeks, IRS employees like Enjalran, Mitchell, Chang, and Phillips are likely to face substantial and immediate irreparable injury (personal distress, clouding of title to property they own, and/or damaging their credit ratings), and their ability to discharge their official duties to collect federal taxes will be interrupted and/or hindered. *See United States v. Edwards*, 2008 WL 1925243, at *4 (finding that the defendant's filing of frivolous UCC Financing Statements caused irreparable harm, and stating that "Government employees deserve protection from [these] reckless, frivolous filings."); *United States v. Van Dyke*, 568 F. Supp. 820, 822 (D. Or. 1983) (defendant's actions "in filing these lawsuits and documents, impose irreparable harm upon the employees of the federal government with whom these tax protestors quarrel").

Apart from an injunction, the United States has no means, civilly, of stopping defendants from filing frivolous liens against Enjalran, Mitchell, Chang, Phillips, or other government

---

³ Although it is unclear in the Ninth Circuit whether plaintiff must only meet the criteria set forth in § 7402(a) to merit injunctive relief or whether plaintiff must also establish the traditional equitable factors for an injunction, because the equitable requirements for the issuance of a permanent injunction are met here, that issue need not be reached. *See, e.g., United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) (finding, with regard to I.R.C. § 7408, that the "traditional requirements for equitable relief need not be satisfied since [the statute] expressly authorizes the issuance of an injunction").

14

employees. Further, because the UCC Financing Statements and Amendments are without factual or legal basis, and thus have no force or legal effect, defendants will not be injured by an injunction which provides that they cannot record similar non-consensual liens or encumbrances in the future. Additionally, the public's interests in fair administration of federal tax laws and prevention of abuse and harassment of government employees supports the imposition of the permanent injunction plaintiff seeks. Accordingly, the Court finds that the permanent injunction that plaintiff seeks under § 7402 is necessary and appropriate for the enforcement of the internal revenue laws, and will recommend that it be granted.

III.   CONCLUSION

Based on the foregoing findings of fact, and the authority of this court pursuant to 26 U.S.C. § 7402, IT IS HEREBY ORDERED that the April 27, 2011 hearing on plaintiff's motion for summary judgment, Dckt. No. 45, is vacated.

IT IS FURTHER RECOMMENDED that:

1. Plaintiff's motion for summary judgment, Dckt. No. 45, be granted;

2. The UCC Financing Statements and Amendments at issue (numbers 09-7212189867, 09-7213771724, 10-7225380533, 10-7225386094, 10-72367455) be declared null, void, and without legal effect;

3. Plaintiff's request for permission to submit a proposed order of nullification suitable for filing with the Secretary of State of California be granted;

4. Defendants be immediately and permanently enjoined from filing any document or instrument which purports to create a non-consensual lien or encumbrance against the person or property of an employee or officer of the United States of America; and

5. The Clerk be directed to enter judgment for plaintiff and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 21, 2011.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE